Jon A. Birmingham (Cal. Bar No. 271034)
jbirmi@fitcheven.com
Fitch, Even, Tabin & Flannery LLP
21700 Oxnard Street, Suite 1740
Woodland Hills, California 91367
Telephone:   (818) 715-7025
Facsimile:    (818) 715-7033

Thomas F. Lebens (Cal. Bar No. 167816)
tlebens@fitcheven.com
Fitch, Even, Tabin & Flannery LLP
100 Cross Street, Suite 203A
San Luis Obispo, California 93401
Telephone:   (805) 548-1800
Facsimile:    (805) 980-3483

Attorneys for Defendant,
ADRIAN COBB

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| TARAN TACTICAL INNOVATIONS, LLC, | Case No.: 2:15-cv-02889-GW-VBKx |
|---|---|
| Plaintiff, | DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT |
| vs. | |
| ADRIAN COBB, | |
| Defendant. | |

# <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ............................................................................. 4

II.    SUMMARY JUDGMENT STANDARD .......................................... 4

III.   THE CLAIMS OF THE '767 PATENT ARE NOT INFRINGED ........................ 4

    A.    Claim Construction ...................................................... 5

        1.    The Law Of Claim Construction............................................ 5

        2.    The Claims Of The '767 Patent .............................. 5

        3.    The Lip Is A Different Structure Than The Endwall........................... 6

        4.    "Securing Means" Engages One Of The Endwalls, Not The Lip ........ 8

    B.    There Is No Literal Infringement ................................................. 10

    C.    There Is No Infringement Under The Doctrine Of Equivalents ................. 10

        1.    The "All Elements Rule" And The "Vitiation Doctrine" ................... 11

        2.    Vitiation Doctrine Is A Threshold Question Of Law ........................ 11

        3.    Vitiation Doctrine Precludes Finding of Infringement....................... 12

            a.    Simplicity................................................................. 12

            b.    Specificity And Narrowness Of The Claims ........................... 12

            c.    Foreseeability.......................................................... 13

            d.    Differences In Kind Versus Differences In Degree ................. 14

IV.   CONCLUSION................................................................................. 14

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).........................................................4

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 296 F.3d 1106 (Fed. Cir. 2002).............9

*Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350 (Fed. Cir. 2005) ....................12

*Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327 (Fed. Cir. 2004) .........................8, 9

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995)..............................5

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ......................................................5

*Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420 (Fed. Cir. 1997) .............11, 12, 13

*Seachange Int'l, Inc. v. C-Cor, Inc.*, 413 F.3d 1361 (Fed. Cir. 2005)................................11

*Tronzo v. Biomet, Inc.*, 156 F.3d 1154 (Fed. Cir. 1998)....................................................11

*Van Blarcom Closures, Inc. v. Owens-Illinois, Inc.*, 507 F. Supp. 2d 214 (E.D.N.Y. 2007)
..................................................................................................................................13, 14

*Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17 (1997)...............11, 12

**<u>Statute</u>**

35 U.S.C. § 112, ¶ 6 (pre-AIA)............................................................................................9

**<u>Rule</u>**

Fed. R. Civ. P. 56(a)...........................................................................................................4

1  **I.     INTRODUCTION**

2        Defendant, Adrian Cobb ("Cobb"), is entitled to summary judgment of non-

3  infringement of U.S. Patent No. 7,509,767 ("the '767 patent")[1] at this time.

4        The independent claims of the '767 patent each recite "…a magazine tube having a

5  pair of sidewalls, a pair of endwalls, and a lip on each of the sidewalls…."  Further, the

6  independent claims each require "a securing means … for engaging one of the endwalls of

7  the magazine tube…."  Defendant's pin does not engage the endwall of a magazine tube.

8  Instead, the pin can engage a lip that is on one of the sidewalls of the magazine tube.

9  Thus, there is no literal infringement.

10       Moreover, as a matter of law the "vitiation doctrine" prohibits a finding of

11  infringement under the doctrine of equivalents.   In other words, broadening the

12  requirement of "a securing means … for engaging one of the endwalls of the magazine

13  tube…" to effectively erase the term "endwall" would vitiate the simple, clear and

14  specific language of the asserted claims of the '767 patent.

15  **II.    SUMMARY JUDGMENT STANDARD**

16       A party is entitled to summary judgment if it shows that there is no genuine issue of

17  material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  On a

18  motion for summary judgment, the Court views the record in a light most favorable to the

19  non-moving party and draws all reasonable inferences in that party's favor. *Anderson v.*

20  *Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Judgment must be entered "if, under the

21  governing law, there can be but one reasonable conclusion as to the verdict." *Id.*

22  **III.    THE CLAIMS OF THE '767 PATENT ARE NOT INFRINGED**

23       Determining whether an accused device infringes a patent involves a two-step

24  process: the court first determines the meaning of disputed claim terms and then compares

25

26

27  [1]    The '767 patent is attached as Exhibit A to the Declaration of Jon A. Birmingham

28

1   the accused device to the claims as construed." *Markman v. Westview Instruments, Inc.*, 52
2   F.3d 967, 976 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996).

3       **A.   Claim Construction**

4           **1.   The Law Of Claim Construction**

5           A claim term is construed according to its "ordinary and customary meaning," as
6   understood by a person of ordinary skill in the art at the time of the invention. *Phillips v.*
7   *AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc), cert. denied, 546 U.S.
8   1170 (2006). "[T]he court looks to those sources available to the public that show what a
9   person of skill in the art would have understood disputed claim language to mean,"
10  including "the words of the claims themselves, the remainder of the specification, the
11  prosecution history, and extrinsic evidence concerning relevant scientific principles, the
12  meaning of technical terms, and the state of the art." *Id.* at 1314 (citations and internal
13  quotation marks omitted).

14          There is no requirement that every term of a claim be construed. As the Federal
15  Circuit has recognized, "[i]n some cases, the ordinary meaning of claim language as
16  understood by a person of skill in the art may be readily apparent even to lay judges, and
17  claim construction in such cases involves little more than the application of the widely
18  accepted meaning of commonly understood words." *Philips*, 415 F.3d at 1314.

19          **2.   The Claims Of The '767 Patent**

20          The claim terms at issue do not require any construction beyond their plain and
21  ordinary meaning in view of the specification and claims of the '767 patent.  As admitted
22  by TTI, "[t]his is a simple Patent action." (Dk. Entry No. 15, p. 2, l. 7.)  Claim 1 is
23  reproduced below in its entirety:

24

25          1. An improved base pad for attachment to an open

26      bottom of *a magazine tube having a pair of sidewalls, a pair of*

27

28

> ***endwalls and a lip on each of the sidewalls at the bottom of the magazine tube***, said base pad comprising:
>
> a body member having a first end, an opposing second end, a first side, an opposing second side and a bottom, said second end, said first side and said second side generally shaped to correspond to the contour of the bottom of the magazine tube;
>
> a groove in each of said first side and said second side, said groove sized and configured to slidably receive the lip on the sidewalls of the magazine tube and attach said base pad to the bottom of the magazine tube; and
>
> ***a securing means*** at said first end of said body member ***for engaging one of the endwalls of the magazine tube*** to secure said base pad to the bottom of the magazine tube when in an engaged position and allowing separation of said base pad from the magazine tube when in a disengaged position.

(Ex. A, col. 10, ll. 49-67 (emphasis added).)  The only other independent claim, claim 11, also includes the same bolded language as claim 1.

### 3.    The Lip Is A Different Structure Than The Endwall

According to the plain language of the claims, the magazine tube has a pair of sidewalls, a pair of endwalls and a lip on each of the sidewalls at the bottom of the magazine tube.   Thus, the lip is not the same as the endwalls, but rather is on each of the sidewalls.

This is consistent with the specification of the '767 patent, which only describes the lips.   There is no description in the '767 patent that the lips are part of the endwalls.

Instead, the lips are consistently described as a separate part of the magazine tube that extend outwardly from the sidewalls of the magazine tube.

For example, the '767 patent states as follows: "[a]s best shown in the exploded view of FIG. 4, the pair of lips 40 extend outwardly from the sidewalls 22…." (Ex. A, col. 6, ll. 59-60.)   Figure 4 is reproduced below with text annotation and to add an arrow pointing to the lips:



FIG. 4

Figure 3 is reproduced below with text annotation, and clearly shows the lips 40 extending from the sidewalls 22a/22b.  The lips 40 of the magazine tube 18 are received in grooves 56 of the base pad 10. (Ex. A., col. 7, ll. 49-54.)



### 4.    "Securing Means" Engages One Of The Endwalls, Not The Lip

According to the plain language of the claims, the "securing means" is for engaging one of the endwalls – not one of the lips – of the magazine tube.

The term "a securing means … for engaging one of the endwalls of the magazine tube …" employs means-plus-function language as permitted by 35 U.S.C. § 112, ¶ 6 (pre-AIA). The first step in construing the means-plus-function limitation is to determine the particular function. *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1333 (Fed. Cir. 2004). "The court must construe the function of a means-plus-function limitation to include the limitations contained in the claim language, and only those limitations." *Id.* (quoting *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 296 F.3d 1106, 1113 (Fed. Cir.

2002)).[2]  Here, the Court need not go beyond the first step.  The function of the means-plus-function limitation includes at least "for engaging one of the endwalls of the magazine tube."

There is not a single example in the '767 patent of the "securing means" engaging one of the lips.  Instead, the specification of the '767 patent is replete with reference to the "securing means" engaging one of the endwalls:

- "the preferred embodiment of base pad 10 has a securing mechanism, shown generally as 62, at outwardly extending section 58 that is configured to selectively ***engage endwall 20a*** of magazine tube 18…." (Ex. A, col. 8, ll. 7-10 (emphasis added).)

- "In addition, a variety of screws, bolts or other connecting elements can be utilized for securing mechanism 62 to ***engage endwall 20a*** of magazine tube 18." (Ex. A, col. 10, ll. 11-13 (emphasis added).)

- "securing mechanism 62 can be attached to the first end 44 of body member 42 or at first side 48, second side 50 or bottom 52 near the first end 44 in a manner such that it extends upwardly or sideways to ***engage endwall 20a*** and prevent the lips 40 on magazine body 18 from disengaging from grooves 56 of base pad 10…." (Ex. A, col. 10, ll. 23-28 (emphasis added).)

---

[2]      The second step in construing the means-plus-function limitation is to look to the specification and identify the corresponding structure for performing that function.  *Golight*, 355 F.3d at 1334.  Here, corresponding structures identified in the specification are a ball detent device and screw, *e.g.*, at col. 8, ll. 38-39 and ll. 52-56; and col. 9, ll. 63-65.

**B.      There Is No Literal Infringement**

Defendant's pin does not engage the endwall of a magazine tube. (Cobb Decl., ¶ 5.) Instead, the pin engages a lip that is on one of the sidewalls of the magazine tube.  The pin engaging the lip – and not the endwall – of the magazine tube is shown in the below, left photograph. (Cobb Decl., ¶ 6.)  The magazine tube removed from the base pad to show the lip is in the below, right photograph. (Cobb Decl., ¶ 6.)



The lip is not the same as the endwall, as discussed above, but rather is a separately defined structure of the magazine tube that extends from the sidewall of the magazine tube.  A reasonable fact finder could not find that the pin engages the endwall.  Thus, there is not literal infringement of the claims of the '767 patent.

**C.      There Is No Infringement Under The Doctrine Of Equivalents**

The doctrine of equivalents applies when the accused product does not contain every claim limitation but nonetheless provides the same function in the same way with the same results. *See Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1424 (Fed.

Cir. 1997).   However, there are restrictions on the doctrine of equivalents.  One of those restrictions is the "vitiation doctrine," which is part of the "all elements rule."

### 1.    The "All Elements Rule" And The "Vitiation Doctrine"

The all elements rule requires that "every element of a claim" must be "literally or equivalently present in the accused device." *Sage*, 126 F.3d at 1423.

As the Supreme Court stated,

> Each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole. It is important to ensure that the application of the doctrine, even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety.

*Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 29-30 (1997).

The vitiation doctrine provides that "[i]f a theory of equivalence would vitiate a claim limitation [], then there can be no infringement[.]" *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1160 (Fed. Cir. 1998). The Federal Circuit has described this rule as necessary to prevent the application of the doctrine of equivalents from reducing claims "to functional abstracts, devoid of meaningful structural limitations on which the public could rely." *Sage*, 126 F.3d at 1424.  The vitiation doctrine prevents a skilled patent drafter who clearly and explicitly states the elements of his claims from later seeking coverage over a device without those precise elements under the doctrine of equivalents. *See Warner-Jenkinson*, 520 U.S. at 40.

### 2.    Vitiation Doctrine Is A Threshold Question Of Law

The applicability of the vitiation doctrine in a particular case is a question of law. *Seachange Int'l, Inc. v. C-Cor, Inc.*, 413 F.3d 1361, 1378 (Fed. Cir. 2005).  Thus, the Supreme Court and the Federal Circuit have held that summary judgment is appropriate

when the court determines, as a threshold matter, that a finding of equivalents would entirely vitiate a claim limitation. *Warner-Jenkinson*, 520 U.S. at 39, n.8 ("[I]f a theory of equivalence would entirely vitiate a particular claim element, partial or complete summary judgment should be rendered by the court, as there would be no further *material* issue for the jury to resolve."); *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005); *Sage*, 126 F.3d at 1429.

### 3.    Vitiation Doctrine Precludes Finding of Infringement

A non-exclusive list of factors to consider in evaluating the whether the vitiation doctrine precludes a finding of equivalence include (1) "the simplicity of the structure"; (2) "the specificity and narrowness of the claims"; (3) "the foreseeability of variations at the time of filing the claim with the PTO"; and (4) whether the difference between the claim element and the pertinent characteristic of the accused devices is a difference in kind or degree. *Freedman*, 420 F.3d at 1360-61.

As explained below, each of these factors demonstrates that broadening the claim limitation of "a securing means … for engaging one of the endwalls of the magazine tube…" to erase the term "endwall" would impermissibly vitiate that limitation.

### a.    Simplicity

The purported invention in this case is a simple one that can be easily described with plain language and drawings.  As admitted by TTI, "[t]his is a simple Patent action." (Dk. Entry No. 15, p. 2, l. 7.)  The language in the patent and the drawings accompanying it are clear, and unambiguously indicate that the "securing means" is positioned "for engaging one of the endwalls of the magazine tube."  There is no failure of language or some other ambiguity.  This factor weighs heavily in favor of vitiation.

### b.    Specificity And Narrowness Of The Claims

"Courts are also more likely to find that the vitiation doctrine bars a finding of equivalents infringement when the structural limitations in the patent claim are clear and specific." *Van Blarcom Closures, Inc. v. Owens-Illinois, Inc.*, 507 F. Supp. 2d 214, 223

(E.D.N.Y. 2007).  "[I]f an invention is claimed narrowly and precisely, a patent holder cannot later expand his claims through the doctrine of equivalents." *Id.*, citing *Sage*, 126 F.3d at 1424-25.

Here, the claims provide a specific and narrow location – the endwall of the magazine tube – for engagement by the "securing means."  Moreover, the claims themselves make a stark distinction between the end walls and the lips of the magazine tube, as described above.  This distinction is reiterated in the specification.  Thus, this factor weighs heavily in favor of vitiation.

### c.    Foreseeability

The claims of the '767 patent describe a simple structural device. A skilled patent drafter would foresee the limiting potential of the "a securing means … for engaging one of the endwalls of the magazine tube…" limitation. As articulated in *Sage Products*, "[n]o subtlety of language or complexity of the technology, nor any subsequent change in the state of the art, such as later-developed technology, obfuscated the significance of this limitation at the time of its incorporation into the claim." *Id.* at 1425.  If the applicant for the '767 patent wanted broader patent protection, it could have sought claims with fewer or different structural limitations. Thus, this factor weighs heavily in favor of vitiation.

Furthermore, the specification of the '767 patent even recognizes that the prior art discloses a pin could be used to engage the lips of a magazine tube.  For example, in describing a prior art patent, the '767 patent states as follows: "[t]he bottom of the magazine tube is placed into the base pad cavity and then the pins, which are preferably the two legs of a single U-shaped pin or clip, are inserted into the channels to engage the upper side of the lip on the magazine tube and secure the base pad to the magazine tube." (Ex. A, col. 2, l. 64 – col. 3, l. 2.)  This further demonstrates that it was plainly foreseeable that requiring that "a securing means … for engaging one of the endwalls of the magazine tube…" would be limited to one of the endwalls as opposed to one of the lips.

### d.    Differences In Kind Versus Differences In Degree

The difference between the endwalls and the lips is clear, and is one of kind rather than one of degree.  The patent claims and specification precisely distinguish between the endwalls and the lips, as discussed above.  Thus, this factor weighs heavily in favor of vitiation.  An example of a difference in kind is discussed in *Blarcom*, where the court found that the difference between cover wall abutments and side wall abutments was one of kind, rather than degree. *Blarcom*, 507 F. Supp. 2d at 226.

## IV.    CONCLUSION

For at least the reasons set forth herein, Cobb is entitled to summary judgment of non-infringement, both literal and under the doctrine of equivalents.  The accused devices simply lack that "a securing means … for engaging one of the endwalls of the magazine tube…" as required by each of the claims of the '767 patent.  To find the lip to be equivalent to the endwall would be legally impermissible under the doctrine of equivalents because such a finding would vitiate this simple, clear and specific language of the asserted claims of the '767 patent.

Dated:  August 17, 2015                    Respectfully submitted,

                                           /s/ Jon A. Birmingham
                                           Jon A. Birmingham (Cal. Bar No. 271034)
                                           jbirmi@fitcheven.com
                                           Fitch, Even, Tabin & Flannery LLP
                                           21700 Oxnard Street, Suite 1740
                                           Woodland Hills, California 91367
                                           Telephone:  (818) 715-7025
                                           Facsimile:   (818) 715-7033

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Thomas F. Lebens (Cal. Bar No. 167816)
tlebens@fitcheven.com
Fitch, Even, Tabin & Flannery LLP
100 Cross Street, Suite 203A
San Luis Obispo, California 93401
Telephone:   (805) 548-1800
Facsimile:    (805) 980-3483

ATTORNEYS FOR DEFENDANT